IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GREG WILBERGER, as Personal Representative of the Estate of BROOKE WILBERGER, decedent,<br><br>      Plaintiff,<br><br>    v.<br><br>CREATIVE BUILDING MAINTENANCE, INC., a Delaware Corporation,<br><br>      Defendant. | Civ. No. 06-714-AA<br><br>OPINION AND ORDER |

AIKEN, Chief Judge:

    Plaintiff Greg Wilberger, as the personal representative of the estate of Brooke Wilberger, filed suit against defendant Creative Building Maintenance (CBM) for the negligent hiring and supervision of an employee, Joel Patrick Courtney. Courtney has been charged with the abduction, assault and murder of Brooke Wilberger and is currently awaiting trial in Benton County, Oregon. CBM now moves for summary judgment, arguing that as a matter of law

1   - OPINION AND ORDER

it could not reasonably foresee that Courtney would encounter, abduct, or assault Ms. Wilberger, and that its conduct did not create the risk of harm that befell her. While I empathize with the Wilberger family's desire to hold accountable those responsible for Brooke Wilberger's abduction and presumed murder, I find that CBM cannot be held liable for the harm caused by Courtney's actions and grant CBM's motion.

## BACKGROUND

CBM was a company that performed janitorial work for corporate businesses.[1] In May 2004, CBM interviewed and hired Courtney. His position involved inspecting janitorial work, bringing supplies to crew members, and communicating with customers concerning the quality of CBM's services. CBM employees, including Courtney, were given mobile phones and company vehicles to travel to and from work sites. CBM alleges that during his interview and subsequent training, Courtney appeared well spoken, friendly, and exhibited no strange, violent, or illegal behavior.

On its web site, CBM advertises that its employees are insured, bonded, and subject to credit and security clearance checks. Declaration of Gerald C. Doblie (Doblie Decl.), Ex. 2. However, CBM did not obtain a criminal history check for Courtney before he was hired. A background check likely would have revealed

---

[1] After plaintiff filed suit, CBM sought protection under the Bankruptcy Code. Plaintiff was granted relief from the automatic stay to proceed with this litigation.

2   - OPINION AND ORDER

that in January 1985, Courtney was convicted of Sex Abuse I and Attempted Rape.

On May 24, 2004, Brooke Wilberger disappeared from an apartment complex in Corvallis, Oregon.

Shortly after Courtney began working, CBM claims that it discovered he was not dependable and terminated Courtney's employment prior to May 24, 2004. CBM contends that it then unsuccessfully attempted to retrieve the company van from Courtney. CBM discovered that Courtney had taken the van to New Mexico, and a CBM employee traveled to New Mexico and retrieved it.

On May 16, 2006, plaintiff filed this action. Plaintiff alleges that Courtney abducted Brooke Wilberger in Corvallis while driving the CBM van, and that CBM's negligence in hiring and supervising Courtney renders it liable.

## STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the applicable substantive law. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

3   - OPINION AND ORDER

U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. All reasonable doubts as to the existence of genuine issues of material fact are resolved against the moving party and all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

CBM first argues that it cannot be held liable for Courtney's actions when he was no longer employed or authorized to use the CBM van on May 24, 2004. Plaintiff contests CBM's assertion that it fired Courtney prior to Ms. Wilberger's abduction and presents evidence that Courtney continued to work for CBM and receive compensation after May 24, 2004. See Doblie Decl., Exs. 27, 28, 29. Further, plaintiff emphasizes that no record exists of Courtney's termination prior to May 24, 2004. Accordingly, I find that whether CBM terminated Courtney prior to May 24, 2004 remains a disputed issue of material fact.

Alternatively, CBM argues that it was not reasonably foreseeable that Courtney would encounter and cause harm to Ms. Wilberger, because he did not travel to Corvallis or contact Ms. Wilberger in the course of his duties as a CBM employee. For the same reasons, CBM maintains that its actions of hiring and

supervising Courtney did not create the risk of harm suffered by Ms. Wilberger, particularly in light of the fact that Courtney's criminal history was not known by CBM.

Plaintiff responds that because CBM hired Courtney without a background check, required his presence in Oregon, and issued him a company van, it was reasonably foreseeable that Courtney would cause harm to Ms. Wilberger in light of his criminal history. At a minimum, plaintiff contends that the foreseeability of Courtney's conduct is a genuine issue of material fact that survives summary judgment.

"For liability to attach under a general foreseeability theory, a trier of fact must be able to find that there was a reasonably foreseeable risk of harm to the plaintiff and that the defendant's conduct was unreasonable in light of that risk." Fraker v. Benton County Sheriff's Office, 214 Or. App. 473, 490, 166 P.3d 1137 (2007); see also Panpat v. Owens-Brockway Glass Container, Inc., 188 Or. App. 384, 391, 71 P.3d 553 (2003) (an employer is "subject to the general duty . . . to avoid conduct that unreasonably creates a foreseeable risk of harm to a plaintiff") (quoting Faverty v. McDonald's Restaurants, 133 Or. App. 514, 523, 892 P.2d 703 (1995)); see also Hoke v. May Dep't Stores Co., 133 Or. App. 410, 416, 891 P.2d 686 (1995) ("Defendant's liability depends on whether defendant unreasonably created the risk of harm that befell plaintiff.").

5   - OPINION AND ORDER

> Where, as here, plaintiffs' harm was caused by the criminal acts of a third party, defendant may be found liable if it was reasonably foreseeable to defendant that plaintiffs would suffer harm as a result of those criminal acts and if defendant unreasonably created the risk of the harm that befell plaintiffs or, stated differently, provided more that "mere facilitation" of the third party's criminal acts.

Fraker, 214 Or. App. at 490, 166 P.3d 1137; see Fazzolari v. Portland Sch. Dist. No. 1J, 303 Or. 1, 17, 734 P.2d 1326 (1987) (liability for harm resulting from a defendant's conduct depends on whether such conduct unreasonably created a foreseeable risk "of the kind of harm that befell the plaintiff").

CBM argues that it was not reasonably foreseeable that Courtney would encounter Ms. Wilberger during the course of his employment, because Ms. Wilberger was not a CBM employee, client, or an employee of a CBM client, and Courtney did not drive the van to Corvallis to inspect janitorial work. McPherson v. State ex rel. Dep't of Corrections, 210 Or. App. 602, 614, 152 P.3d 918 (2007) (to "gauge the reasonable foreseeability of the harm that occurred," the court "must consider whether 'the person harmed is one of the general class threatened'" by the defendant's conduct) (quoting Stewart v. Jefferson Plywood Co., 255 Or. 603, 609, 469 P.2d 783 (1970)).  Thus, CBM maintains that the harm to Ms. Wilberger was not foreseeable.

In so arguing, CBM relies on the facts and holding in Chesterman v. Barmon, 82 Or. App. 1, 727 P.2d 130 (1986).  There, the employee of a construction company, whom the employer allegedly

6   -   OPINION AND ORDER

knew used drugs, ingested a drug while at a construction site. 82 Or. App. at 3, 727 P.2d 130. While driving from the construction site, the employee began hallucinating, stopped at what he mistakenly thought was a friend's house and sexually assaulted the woman who lived there. Id. The woman sued the defendant for negligent hiring and retention. Id.

In affirming summary judgment for the defendant, the Court of Appeals explained that it was not reasonably foreseeable that the employee would come in contact with the plaintiff during the course of his employment, because the plaintiff was not a client or potential client of the employer's and had no relationship with defendant or its employees. Id. at 5, 727 P.2d 130. The court concluded that based on those facts, the employer could not be held liable under a negligent hiring or retention theory. Id.

Likewise, it was not reasonably foreseeable that Ms. Wilberger would come into contact with Courtney as a result of his employment with CBM - particularly in circumstances unrelated to his employment duties - and suffer harm as a result. Even if Courtney posed an unreasonable risk to persons because of his employment with CBM, the foreseeability of harm extends to clients, potential clients, or employees of CBM. Chesterman, 82 Or. App. at 5, 272 P.2d 130. Therefore, because Ms. Wilberger was not an employee, client, potential client, or employee of a client, Ms. Wilberger was not within the class of persons that would render defendant's

7    - OPINION AND ORDER

conduct negligent, and the risk of harm to her was not foreseeable.

Plaintiff nonetheless maintains that CBM's issuance of a company vehicle lent Courtney an appearance of respectability and, in light of Courtney's criminal history, unreasonably created a foreseeable risk of harm to Ms. Wilberger.  However, plaintiff's argument extends the realm of reasonably foreseeable risks further than Oregon law permits.

In <u>Buchler v. Oregon Corrections Div.</u>, 316 Or. 499, 502, 853 P.2d 798 (1993), a prisoner convicted of property crimes escaped from a work camp in a state corrections van after the keys were left in the ignition.  Two days later, the prisoner shot two people with a gun stolen from his mother's residence, killing one of them. <u>Id.</u>  Plaintiffs sued for negligent supervision and failure to warn. <u>Id.</u>  The Oregon Supreme Court affirmed the trial court's grant of summary judgment, finding that the injury inflicted by the prisoner was not within the scope of reasonable foreseeability.  <u>Id.</u> at 504. The Court explained:

> While it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity.  In other words, in our society it is foreseeable that crimes may occur and that the criminals may cause harm. . . .  But mere "facilitation" of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it.

<u>Id.</u> at 511-12.  The Court concluded that it was not reasonably

8    - OPINION AND ORDER

foreseeable that the harm that actually occurred – the intentional shooting – would result from the risk of harm that was created by leaving the keys in the van.  Id. at 514.

I similarly find that even if CBM "facilitated" the unintended adverse result of Courtney's criminal behavior by giving him access to a company van, it was not reasonably foreseeable that the risk of harm to Ms. Wilberger would result from CBM's actions.  Rather, it was Courtney's "intervening intentional criminality" that caused the harm to Ms. Wilberger.

I am not persuaded that the caselaw plaintiff cites renders the holding in Buchler inapplicable to this case.  For example, in Washa v. Or. Dep't of Corrections, 159 Or. App. 207, 213, 979 P.2d 273 (1999), a recent parolee with a long history of committing violent acts against women absconded from parole, raped two women, and murdered one of them.  After being sued for negligent supervision, the Oregon Department of Corrections (ODOC) argued that it could not be held liable because the parolee's intervening intentional criminal conduct, not ODOC's lack of supervision, created the risk and caused the harm.  Id. at 221, 979 P.2d 273.

The Oregon Court of Appeals rejected this argument and held that ODOC could be found liable for the parolee's intentional criminal acts. Recognizing Buchler "had the effect of limiting the scope of foreseeable harms for which a defendant is liable to reasonably foreseeable harms," the court stated:

9    - OPINION AND ORDER

> [G]eneral forseeability analysis in a negligent supervision claim properly turns on whether – in light of the third party's criminal history – the defendant could reasonably foresee that the third party, if inadequately supervised, would engage in the kind of criminal conduct that ultimately harmed the plaintiff.

Id. at 222, 225, 979 P.2d 273. The court concluded it was reasonably foreseeable that the act of leaving a dangerous parolee unsupervised would lead to the harm that occurred, because the parolee "committed exactly the kind of heinous crimes" that he had before. Id.[2] Thus, a defendant's knowledge of the third party's propensity for violence "plays an important role in determining whether the harm was reasonably foreseeable." Panpat, 188 Or. App. at 392, 71 P.3d 553; see also Miller v. Tabor West Investment Co., LLC, 223 Or. App. 700, 712-14, 196 P.3d 1049 (2008) (accord).

Here, it is undisputed that CBM had no knowledge of Courtney's criminal history, and plaintiff presents no evidence that CBM should have known about Courtney's 1985 conviction. Plaintiff cites no requirement or regulation that an employer must obtain criminal background checks for all of its employees.[3] As CBM emphasizes, it hired Courtney to inspect janitorial services, and

---

[2] Notably, unlike the facts in Washa, CBM was not a state entity entrusted with supervising the actions of a prisoner or recent parolee whose violent criminal history was well-known and formed the basis for the supervisory relationship.

[3] Although CBM might have misrepresented that all of its employees are subject to security checks, such misrepresentation does not give rise to plaintiff's claim for negligence, because Ms. Wilberger was not a client or potential client to whom CBM's representation was directed.

10   - OPINION AND ORDER

it had no reason to suspect that hiring Courtney and providing him with a vehicle to perform inspections would result in the kidnaping and murder of Ms. Wilberger.

Likewise, plaintiff's reliance on Hoke is unavailing. There, the plaintiff was sexually assaulted by a security guard after being detained by the guard for shoplifting. Hoke, 133 Or. App. at 412-13, 891 P.2d 686. The Oregon Court of Appeals held that questions of fact remained as to whether defendant failed to reasonably investigate a prior sexual misconduct complaint against the guard and failed to ensured that its employees complied with security policies, thus rendering it reasonably foreseeable that "the harm that befell plaintiff would occur." Id. at 421, 891 P.2d 686; see also Panpat, 188 Or. App. 394-96, 71 P.3d 553 (employer's knowledge of employee's mental illness, anger, and anxiety over recent break-up with a co-worker raised issues of fact regarding forseeability of harm to the co-worker and the reasonableness of the employer's alleged failure to provide adequate security).

Thus, not only did the defendant in Hoke have notice of the guard's prior sexual misconduct, a connection existed between the harm that befell the plaintiff, the duties that the employee security guard was hired to perform, and the defendant's alleged negligent supervision of those duties. In contrast, plaintiff fails to explain how CBM's issuance of a company van to Courtney created the risk of harm to Ms. Wilberger. CBM had no knowledge of

11   - OPINION AND ORDER

Courtney's dangerous propensities, and the harm that befell Ms. Wilberger was unrelated to Courtney's employment duties and thus "several steps removed" from CBM's conduct. <u>McPherson</u>, 210 Or. App. at 618, 152 P.3d 918 (explaining that foreseeability "decreases geometrically as steps between a defendant's action and a plaintiff's harm increase arithmetically").

Given these undisputed facts, CBM was - at most - an unwitting facilitator of Courtney's criminal actions. It was not reasonably foreseeable that Ms. Wilberger would suffer harm at the hands of Courtney, and CBM's actions in hiring and supervising Courtney did not unreasonably create the risk of harm.

## CONCLUSION

I am mindful of the fact that "[u]nforseeability as a matter of law should be found only in extreme cases," where the harm results from a "concatenation of highly unusual circumstances." <u>McPherson</u>, 210 Or. App. at 617-18, 152 P.3d 918 (citation omitted). This is such a case, notwithstanding the heart-wrenching circumstances of Ms. Wilberger's disappearance. Accordingly, CBM's motion for summary judgment (doc. 57) is GRANTED.

IT IS SO ORDERED.

Dated this __19__ day of June, 2009.

                         /s/ Ann Aiken
                            Ann Aiken
              United States District Chief Judge

12   - OPINION AND ORDER